REDACTED VERSION

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BID PROTEST**

| | |
|---|---|
| Klinge Corporation,<br>Plaintiff,<br>v.<br>United States of America,<br>Defendant. | No. 08-134C<br>Judge Eric G. Bruggink |

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**NATURE OF THE CASE**

1. Plaintiff, Klinge Corporation ("Klinge"), through its undersigned counsel, hereby protests the unlawful actions of Defendant, the United States of America, acting through the United States Marine Corps Systems Command ("the agency"), in connection with the evaluation and award under Solicitation No. M67854-07-R-5060 of a contract ("the Contract") to Sea Box, Inc. ("Sea Box") for Large Field Refrigeration Systems ("LFRS"). In its initial Complaint (filed on March 6, 2008), Klinge sought: (a) a temporary restraining order and preliminary injunction directing the agency to suspend any delivery orders already issued under the Contract and prohibiting the agency from issuing additional delivery orders to Sea Box while this bid protest is pending; (b) a declaratory judgment that the agency's award of the Contract to Sea Box was arbitrary, capricious, an abuse of discretion, or otherwise contrary to the law; and (c) an order directing the agency to award the Contract to Klinge, if appropriate, or directing the agency to reopen the competition, perform a "best value" comparison of the offers within the competitive range (with Sea Box excluded from same), and award the Contract to the offeror that

[redacted]

represents "best value" to the agency. Item (a) temporarily has been rendered moot by certain actions described herein. Through this First Amended Complaint, Klinge reasserts its claim for the relief set forth in (b) and (c) above.

## JURISDICTION

2. The United States Court of Federal Claims has jurisdiction over this action pursuant to the 1996 amendments to the Tucker Act, 28 U.S.C. § 1491(b). The Tucker Act, as amended, provides that this Court has jurisdiction:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b) (emphasis added). Klinge is an "interested party" under 28 U.S.C. § 1491(b) because it is a responsible contractor that was within the competitive range established by the agency under this procurement. Moreover, as a U.S. supplier of LFRS and related products, Klinge will suffer irreparable injury to its business if Sea Box is awarded the Contract and allowed to provide a[redacted]end product or spare parts that are non-compliant with the Trade Agreement Act, contrary to applicable law, or to otherwise unlawfully alter it proposal after award to render itself eligible for award.

## THE PARTIES

3. The plaintiff, Klinge Corporation, is located in York, Pennsylvania and is a domestic manufacturer of refrigeration units and supplier of refrigerated containers and related items and services.

4. The defendant, United States Marine Corps Systems Command, is located in Quantico, Virginia and is the Marine Corps' principal agent for acquisition of systems and equipment used by the operating forces to accomplish their war-fighting mission. The Contracting Officer for this procurement was Terence J. McGinn ("CO McGinn"), and primary counsel was David P. Ingold, Esq.

[redacted]

5. Sea Box, Inc., awardee of the disputed Contract, is a New Jersey-based company and a regular competitor of Klinge under Department of Defense procurements. Its Director of Contracts, Robert Farber, J.D., has served as its chief point of contact during the two preceding protests before the Government Accountability Office ("GAO") involving the award of this Contract and in the proceedings before this Court. Mr. Farber was not, however, admitted under the Protective Order issued by the GAO. Moreover, the parties have agreed that Mr. Farber will not have access to protected materials in the proceedings before this Court. An unopposed Motion for Protective Order was filed by Klinge on April 8, 2008.

## STATEMENT OF FACTS & PROCEDURAL HISTORY

### *A. Description of The Acquisition*

6. Through this procurement, the agency sought to purchase an indefinite quantity of Large Field Refrigeration Systems ("LFRS"), which consist of two principal components: (a) a 20-foot, International Standards Organization ("ISO")-compliant, insulated Container ("Container"); and (b) an electrically powered Refrigeration Unit ("RU"). *Statement of Objectives*, Appendix to Motion for Temporary Restraining Order and Preliminary Injunction, Attachment 1, at P-000001.[1]

7. A Refrigerated Container (or LFRS) is a different article of commerce from -- and

[1] Klinge filed with its initial Complaint a Motion for a Temporary Restraining Order and Preliminary Injunction, along with an Appendix containing documents related to the procurement. All citations from the initial Complaint refer to the attachments to that Appendix by identifying the document title, the attachment number, and the Bates Number affixed to the document (*i.e.*, P-000001–000226). Additionally, Klinge filed a Motion for Leave to File its Initial Complaint Under Seal. As such, protected information in the Complaint was highlighted and a redacted version was furnished. The agency filed an Administrative Record after the filing of Klinge's initial Complaint. Accordingly, the new facts alleged in this First Amended Complaint will cite to the Administrative Record. A redacted version of this First Amended Complaint will be filed after its content has been agreed to by agency counsel. Klinge has tentatively highlighted potentially protected material in this document.

with a name, character, and use distinct from -- a Container. A Refrigerated Container (or LFRS) is also a different article of commerce from -- and with a name, character, and use distinct from -- an RU. *Id.*

8. Between September 2006 and March 2007, the agency conducted market research for the LFRS. The agency's market research indicated, *inter alia*, that non-U.S. components would likely be required:

[redacted]

*Market Research for LFRS,* Attachment 2, P-000009.

***B. The Request For Proposals***

9. On April 10, 2007, the agency issued Request for Proposal ("RFP") No. M67854-07-R-5060 for an LFRS and related supplies and services. The RFP contemplated a "commercial item" Indefinite-Delivery Indefinite-Quantity Contract. The LFRS was to be comprised of a "picture-frame" type RU[2] integrated within a ISO-compliant, insulated Container. *See generally RFP No. M67854-07-R-5060 and Amendments,* Attachment 3, P-000020-000036.

10. The RFP set forth eight Contract Line Item Numbers ("CLINs"). CLIN 0001 required delivery of the LFRS. The RFP contemplated a Contract minimum of 10 units and a Contract maximum of 300 units, with a unit -- or LFRS -- consisting of an integrated Container and RU. *Id.* at P-000021. CLIN 0003 (2-Year Parts Support Package) required the provision of spare parts for the LFRS.

2 A "picture-frame" type RU is one that essentially is installed into or serves as a wall of a Container.

11. Because the acquisition had an estimated value that exceeded $193,000, it was subject to the Trade Agreements Act ("TAA"). *See* Federal Acquisition Regulation ("FAR") 25.402(b). As such, the RFP required that each offeror comply with Department of Defense FAR Supplement ("DFARS") 252.225-7021, "Trade Agreements." However, the agency inadvertently failed to include the required TAA Certificate in the RFP. *See* DFARS 252.225-7020 ("Trade Agreements Certificate"). *Id.* at P-000024.

12. The RFP set forth the following four evaluation factors for this "best value" procurement: (a) Operational Effectiveness (most important); (b) Past Performance (less important); (c) supportability (least important); and (d) Price (evaluated, but not rated). *Id.* at P000023.

***C. The Initial Proposals***

13. Klinge's initial proposal offered to supply a U.S.-made LFRS containing the Klinge Model [redacted] which is manufactured and factory tested by Klinge in the U.S. The Container component of Klinge's LFRS was to be manufactured i[redacted]d shipped to the U.S., where it would be integrated with the RU in [redacted] Klinge's overall price (base year and four option years included) was [redacted] *See Source Selection Evaluation Team Initial Findings and Results (12 June 2007),* Attachment 5, P-000073, 76.

14. In its initial proposal, Sea Box offered an LFRS bearing Sea Box product identification number [redacted] The LFRS offered by Sea Box consists chiefly of: (a) [redacted] *See Excerpts from Initial Proposal of Sea Box, Inc.*, Attachment 4, P000039-41, 45.

15. Sea Box's initial proposal indicated that the RU manufacturer [redacted] would

[redacted] where the RUs would then be integrated with the ISO Containers, thereby creating Sea Box's LFRS. *Id.* at P-000045, P-000057 (§ 4.1: "Refrigeration unit will be installed to the front end frame.") Specifically, in its initial proposal, Sea Box provided a project schedule for [redacted] that identified the following activities as occurring at [redacted]

[redacted]

*Id.* at P-000042 (Rows 14-20). The LFRS would then be packaged and shipped to Sea Box's facility in New Jersey. *Id.* Notably, according to the project schedule, [redacted] *See generally* P000042.

16. Sea Box's proposal further represented that, after [redacted] Sea Box would -- [redacted] Sea Box would then ship the LFRS to the agency. *Id.* (Rows 21-26).

17. Sea Box included within its initial proposal the following certificates related to the "country of origin" for its proposed products:

- [redacted]
- 
- 
- 

• [redacted]

Each of these certificates unequivocally and conspicuously identified Sea Box's LFRS [redacted]*d.* at P000050-54. Specifically, each Certificate contained the following information in the space designated for the identification of any foreign end product offered to the Government:

| Description: | Country of Origin: |
|---|---|
| ISO Refrigerated Container | [redacted] |

Notably, this representation is [redacted] with Sea Box's representation on its GSA Schedule contract for similar Refrigerated Containers, which [redacted] identify [redacted] as the country of origin. *See Excerpts of Documents Obtained by Klinge Corp. From GSA Through Freedom of Information Act Request,* Attachment 25, P-000217 (fourth and fifth row).

18. Additionally, Sea Box expressly certified in its initial proposal that the "Place of Manufacture" for its LFRS is "[redacted] *Excerpts from Initial Proposal of Sea Box, Inc.*, Attachment 4, P000054 (§ (j)(2), "Place of Manufacture" provision).

19. Consistent with this, Sea Box also included two completed Certificates indicating that the place of performance for the manufacture of its LFRS would be at [redacted] The Certificates identified the place of performance as:

| Address of Place of Performance | Owner/Operator | Owner Address (Street, Address, |
|---|---|---|

| (Street, Address, Country, City, State, Zip Code): | | City, Country, State, Zip Code) |
|---|---|---|
| [redacted] | | [redacted] |
| [redacted] | | [redacted] |
| [redacted] | [redacted] | [redacted] |

*Id.* (FAR 52.214-14 certification).

20. Sea Box offered no explanation regarding the discrepancy between: (a) the claim in its certificates that it would supply an LFRS that is an end product of [redacted] and (b) the representation in its proposal that the [redacted] component of its LFRS -- the ISO container -- would never touch [redacted] soil. The difference is significant because [redacted] a "designated country" under the TAA, but [redacted] is not. *See* DFARS 252.225-7021(a)(3). As such, the agency was prohibited from accepting an LFRS manufactured in [redacted] yet was permitted to accept one manufactured in [redacted] Because the [redacted] Container never reaches [redacted], the LFRS cannot possibly be "substantially transformed" in [redacted] Therefore, it was impossible for Sea Box's LFRS to constitute an end item of [redacted]

***D. The Agency's Initial Evaluation of The Proposals***

21. In the initial evaluation, the agency concluded that Klinge's Proposal did not meet a certain mandatory requirement of the RFP. *Source Selection Evaluation Team Initial Findings and Results (12 June 2007)*, Attachment 5, P-000076. Sea Box's proposal reflected the same

failure to meet the same mandatory requirement. *See Excerpt from Klinge Corp.'s Comments on the Agency Report (December 20, 2007)*, Attachment 18, P-000141-143 (disparate treatment argument). Nonetheless, the agency found Klinge "unacceptable" and eliminated it from the competition, while awarding the Contract to Sea Box. *Id.*

22. The agency failed to review proposals for TAA compliance prior to the first award to Sea Box. In fact, the only reference in the original evaluation materials to a country-of-origin review is found in the recommendation portion of the Source Selection Evaluation Team's evaluation report, which recommends that [redacted] *Source Selection Evaluation Team Initial Findings and Results (12 June 2007)*, Attachment 5, P-000074. The Buy American Act ("BAA") did not apply to the procurement.

***E. Award To Sea Box & Initial Protest of Klinge***

23. On July 16, 2007, the agency sent a letter to Klinge advising that the Contract for the LFRS had been awarded to Sea Box at an evaluated price of $12,576,970.90 (for the base year plus four option years). The letter further stated that, of the five proposals received in response to the RFP, Sea Box's proposal represented "best value." On July 17, 2007, Klinge requested a debriefing, which the agency provided via telephone conference on July 26, 2007.

24. During the debriefing, Klinge learned that its proposal had been deemed "technically unacceptable" because the agency determined that it failed to demonstrate an ability to satisfy a mandatory requirement of the RFP.

25. On July 30, 2007, Klinge filed a protest at the Government Accountability Office ("GAO") asserting, *inter alia*, that: (a) the agency wrongfully eliminated Klinge from the competition for failing to meet the mandatory requirement; and (b) Sea Box could not satisfy the

TAA and, as such, the award was based upon a misrepresentation or mistake. That protest bore GAO Case No. B-309930. Contract performance was suspended pending the outcome of the protest.

26. During the weeks that followed, the agency indicated through counsel that it would be taking some form of corrective action in response to the protest. As such, counsel for Klinge provided suggested discussion questions that the agency might use after re-forming the competitive range to address the issues raised in Klinge's protest. Among other things, the proposed discussion questions touched upon both Klinge's and Sea Box's compliance with the TAA.

27. On September 6, 2007, prior to producing documents or a written response to the protest, the agency advised that it would be taking corrective action. Specifically, the agency admitted Klinge (and one other offeror) back into the competitive range and reopened discussions with offerors. Accordingly, the GAO dismissed Klinge's first protest as academic.

***F. "Corrective Action" Discussions and Final Proposal Revisions***

28. On September 6, 2007, the agency issued written discussion questions to Klinge and Sea Box. *See Written Discussion Questions Issued to Klinge Corp. and Sea Box, Inc.*, Attachments 6 and 7, P-000080-83. Among other items, the questions asked each offeror to provide a completed TAA Certificate (DFARS 252.225-7020) and to explain how the offeror's proposed manufacturing process satisfied the TAA.

29. Subsequently, on September 12, 2007, both offerors submitted responses to the written discussion questions. In response to its TAA discussion question, Klinge provided a completed DFARS 252.225-7020 TAA Certificate and a detailed narrative as to how its LFRS satisfied the TAA. *See Excerpt from Klinge Corp.'s Discussion Response Regarding TAA*

*Compliance*, Attachment 8, P-000084-93. Klinge explained that, because it integrates the [redacted] manufactured container with its U.S.-manufactured RU in its [redacted] facility, the LFRS is "substantially transformed" within the U.S.

30. In response to its TAA discussion question, Sea Box also provided a completed DFARS 252.225-7020 TAA Certificate, along with a narrative on its LFRS manufacturing process. *See Excerpts from Sea Box, Inc's Discussion Response Regarding TAA Compliance*, Attachment, P-000094-97. The TAA Certificate provided by Sea Box represented that: (a) each end product to be delivered under the Contract would be a [redacted] and (b) no end products to be delivered under the Contract would be [redacted] *Id.* at P-000097.

31. Sea Box began its accompanying explanation by noting that [redacted] manufactures its [redacted] which it identified as a "Designated country" under DFARS 252.225-7021. Sea Box continued by stating that (emphasis added):

[redacted]

*Id.* at P-000096. (emphasis added). With respect to the ISO Container, Sea Box again confirmed that it is manufactured in [redacted]

32. Sea Box next represented that [redacted] (emphasis added). *Id.* Sea Box explained that, following receipt in New Jersey, the company [redacted] *Id.* [redacted]

[redacted]

33. Sea Box also proffered the following unsubstantiated cost breakdown, by location, to support its claim of TAA compliance (emphasis added):

[redacted]

* * *

[redacted]

*Id.* The [redacted] applied by Sea Box to certify TAA compliance is a self-created variation of the BAA country-of-origin test; the BAA focuses upon the cost and origin of components from the United States (rather than the location in which the end product is "substantially transformed," which is the applicable test under the TAA). Thus, Sea Box "certified" its compliance with the TAA based on an non-existent, inapplicable legal standard.

34. In addition to asking Sea Box about the TAA compliance of its LFRS (CLIN 0001), the agency also asked Sea Box about compliance of its Spare Parts Support Package (CLIN 0003). Sea Box provided the following response:

[redacted]

[redacted]

Tab 21 of the Administrative Record, *USMC questions submitted to Sea Box, Inc. and response from Sea Box, Inc. (September 6 & 12, 2007)*, at 889 (emphasis added).

35. Thereafter, on September 20, 2007, both offerors submitted Final Proposal Revisions ("FPRs") at the request of the agency. In its FPR, Sea Box provided an updated, more [redacted] *See Excerpts from Sea Box, Inc's Final Proposal Revision,* Attachment 12, P-000100-112. Like the schedule in its original proposal, the updated schedule showed that: [redacted] *Id.* at P-000109-111. In describing its Quality Assurance process, Sea Box's FPR also confirmed that the majority of the LFRS [redacted] *See* P-000111a.

36. Sea Box's FPR [redacted], which represented [redacted] to be the country of origin for the LFRS. *Id.* at P000112. The FPR also contained the following representation: "Place of End Item Manufacture: [Required for statistical purposes only.] United States." *Id.* The precise meaning of this representation is not clear.[3] Moreover, nothing in Sea Box's FPR explains how the "place of

[redacted]

manufacture" of the LFRS could have changed from [redacted], when the company's planned manufacturing process remained essentially unchanged.[4]

37. There is no contemporaneous, written record of the agency's evaluation of Sea Box's compliance with the TAA. Despite asking both offerors to address TAA compliance in discussion questions, and despite the unexplained change in Sea Box's position concerning the country of origin for its LFRS, the agency produced no documents demonstrating that the agency ever considered the issue in its final evaluation and award decision.

38. However, in declarations filed with the GAO more than six weeks after submission of the Agency Report,[5] the agency revealed for the first time that, following submission of Sea Box's written discussion responses and after the cut-off date for FPRs, agency counsel contacted Mr. Farber of Sea Box by telephone and advised him that Sea Box's narrative

---

[redacted]

[4] Notably, a post-protest change in Sea Box's position concerning the country of origin of its refrigerated containers is not isolated to this procurement. Under a different protest at the GAO, Klinge challenged the Utah National Guard's award of a refrigerated container contract to Sea Box (B-310701, filed October 19, 2007), alleging a misapplication of the Buy American Act and its exceptions. Ultimately, the agency took corrective action. During the course of the protest, it was revealed that, prior to award, [redacted] Documents obtained by Klinge pursuant to a Freedom of Information Act request, however, revealed that -- [redacted] *Corp. From GSA Through FOIA Request,* Attachment 25, P-000217 (fourth row). (This, of course, did nothing to support the agency's award, as the BAA, not the TAA, governed the acquisition). In December, in its Comments on the Agency Report in that matter, Sea Box took a third and utterly irreconcilable position that the refrigerated container at issue was a U.S. end product.

[5] *See* Statement of Facts, ¶¶ 45-49, *infra.*

on TAA compliance under CLIN 0001 was problematic and conflicted with both: (a) information furnished to the agency by Sea Box after the first award of the Contract; and (b) information in Sea Box's FPR. *See Declaration of Agency Counsel, David P. Ingold (January 24, 2008)*, Attachment 20, P-000161-64. Mr. Farber reportedly responded that he had mistakenly characterized Sea Box's manufacturing process in the written discussion responses (*i.e.*, he now orally represented that [redacted]. The agency accepted Mr. Farber's disavowal of Sea Box's written discussion responses and, relying on this disavowal, found that Sea Box's proposal complied with the TAA and was acceptable for award. *See Statement of Contracting Officer, Terence J. McGinn (January 29, 2008)*, Attachment 22, P-000180. No contemporaneous evidence of this conversation was ever produced in the GAO proceedings. Also, no hearing was conducted by the GAO on this or any other issue in the protest, despite the fact that Klinge consistently requested such a hearing throughout the GAO proceedings.

***G. Second Notice of Award To Sea Box and Debriefing of Klinge***

39. On October 23, 2007, the agency notified Klinge via e-mail that it had again awarded the LFRS Contract to Sea Box for an evaluated price of $12,069,561.31. In its FPR, Klinge's overall price had been reduced to [redacted] On October 26, 2007, Klinge requested an in-person debriefing, asked for an explanation concerning the agency's "best value" analysis and, pursuant to FAR 15.506(d)(6), requested specific information concerning verification of Sea Box's compliance with the TAA.

40. On November 2, 2007, the agency transmitted a power-point debriefing to Klinge via e-mail. In violation of FAR 15.506(d), the agency failed to answer any of the questions submitted by Klinge or otherwise address the issues. The debriefing was silent on the basis for

Sea Box's compliance with the TAA.

***H. Second Protest of Klinge***

41. On November 6, 2007, Klinge filed its second protest with the GAO under this Solicitation. It bore GAO Case No. B-309930.2. Therein, Klinge raised several protest grounds, including, *inter alia*, that: (a) Sea Box's end products fail to satisfy the TAA; and (b) the award was based upon a misrepresentation or a mistake regarding Sea Box's TAA-compliance. Again, contract performance was suspended in its entirety pending the outcome of the protest.

42. On November 16, 2007, the agency produced certain "core" documents at the direction of the GAO. The "core" documents included Sea Box's response to the agency's written discussion questions (discussed above) and its FPR. Because these documents revealed that the primary components of Sea Box's LFRS [redacted] that the [redacted], and that [redacted] Klinge timely filed a First Supplemental Protest, advancing more specific TAA-related protest grounds. At its core, Klinge's supplemental protest ground with respect to CLIN 0001 was (and is) that the core components of Sea Box's LFRS are "substantially transformed" in [redacted] nd the end product shipped from [redacted] has the name, character, and use of a Refrigerated Container. As such, Klinge asserted that, for procurement purposes, [redacted] is the country of origin of Sea Box's LFRS. With respect to CLIN 0003 (2-Year Parts Support Package), in light of Sea Box's written discussion responses, Klinge alleged that "Sea Box failed to satisfy its burden of demonstrating its ability to produce component parts solely from designated countries under the TAA." Administrative Record, Tab 32, *GAO First Supplemental Protest of Klinge Corporation, B-309930.2 (November 6, 2007)*, at 1101.

43. On December 18, 2007 and December 19, 2007, at the direction of the GAO and

immediately preceding the December 20th due date for Klinge's Comments on the Agency Report, the agency finally produced Sea Box's initial proposal with all attachments (*i.e.*, the proposal upon which the agency based its first award of the Contract to Sea Box and to which the FPR applied) (Excerpts produced in Attachment 4). The agency also produced the Source Selection Evaluation Team's evaluation of the proposals prior to the first award of the Contract. *See* Attachment 5. Prior to the production of these documents, the agency had insisted that they bore no relevance to the protest. As discussed above, however, these documents revealed that Sea Box had repeatedly certified that its LFRS was manufactured [redacted]

44. On December 28, 2008, Klinge filed a Second Supplemental Protest, which advanced a more specific misrepresentation protest ground based upon: (a) Sea Box's representations that the [redacted] and (b) its irreconcilable description of its manufacturing process, whereby its [redacted]

45. Collectively, Klinge's Comments on the Agency Report (dated December 20, 2007) and Second Supplemental Protest (December 28, 2007) identified the flaws in the agency's analysis, based upon the then-existing record, advanced additional protest grounds, and identified questions of fact that the agency had failed to address, which were and are critical to a probing analysis of who, when, how, and upon what information the agency determined that Sea Box's offer is compliant with the TAA.

46. On January 9, 2008, the GAO ordered the agency to answer specific questions, with support from the record, on several of these issues. *See Email Inquiry From GAO to Agency*, Attachment 18, P-000144-145. One such question directed the agency to:

[redacted]

(emphasis added). *Id.* at P-000144.

47. In response, the agency filed a supplemental report dated January 14, 2008 that responded to the GAO's specific inquiry by repeatedly citing and relying upon Sea Box's written discussion response and its FPR. *See Excerpts from Agency's Supplemental Report Responding to GAO Inquiry*, Attachment 19, P-000146-160. The agency did not identify any "specific discussions" with Sea Box that led the agency to conclude that Sea Box's LFRS is TAA compliant.

48. Thereafter, in a subsequent filing submitted by the agency on January 24, 2008 (in response to additional questions raised by Klinge), the agency for the first time admitted to telephone communications with Mr. Farber of Sea Box after the submission of its FPR. Specifically, the agency submitted a Declaration from its counsel (David P. Ingold), which stated as follows:

> A question was raised by Sea Box's discussion response regarding CLIN 0001. Specifically, its reference to work performed in [redacted] appeared to be inconsistent with its FPR and with previous information provided to the Government after the initial award and start of performance prior to the first protest. I contacted the Sea Box Director of Contracts to clarify this issue to determine whether Sea Box was compliant with the TAA in order to be eligible for award. Specifically, I asked him to explain what work was being performed [redacted] Mr. Farber indicated that he had prepared the discussion responses and that he was not an engineer and that his discussion statement was incorrect to the extent that it indicated that mechanical and electrical integration took place in [redacted] I believe that he consulted with Mr. Brennan, the President of Sea Box, at some point in time to verify that he was correct in saying that no work [redacted]

> I advised the SYSCOM Contracting Officer, Terry McGinn, of my legal opinion that given all the representations of Sea Box that they understood their obligations under the TAA and that the [redacted] did not serve to make them TAA noncompliant.

P-000163 (emphasis added). *See also* Attachment 22.

49. To date, it is unknown what "previous information" Sea Box supplied to the agency after the first award of the Contract (and which the agency believed was inconsistent with Sea Box's FPR). Also, the agency never revealed the specific oral assurances given by Sea Box regarding its TAA compliance under CLIN 0001 or the description of the work it claims to perform in [redacted] In addition, although it intervened and participated in the GAO protests, Sea Box never offered evidence that: (a) describes in detail the specific work performed in the U.S.; or (b) demonstrates that the LFRS is not a "Refrigerated Container" when it leaves [redacted]

50. In response to the agency's admission of post-FPR discussions with Sea Box, and its permitting Sea Box essentially to disavow a portion of its written discussion response and proposal materials, Klinge formally protested the agency's post-FPR discussions with Sea Box. Klinge argued that these discussions were prejudicial because, by the agency's own admission, the discussions were the basis on which Sea Box's otherwise unacceptable proposal was found acceptable by the agency. *See Excerpts From Klinge Corp.'s Comments on the Supplemental Agency Reports of January 24, 2008 (January 28, 2008)*, Attachment 21, P-000165-179.

51. The GAO solicited additional filings from the parties, which largely addressed the issue of whether the agency's post-FPR communications with Sea Box constituted a "clarification" or "discussions" under FAR 15.306. On February 1, 2008, the GAO closed the record.

52. On February 13, 2008, the GAO denied the protest and found, *inter alia*, that [redacted] *See GAO Decision (February 13, 2008)*, Attachment 23. [redacted]

53. Because these issues are critical to Klinge's continued viability as a U.S. manufacturer, Klinge sought relief from the Court as set forth in its initial Complaint and motion for a temporary restraining order and preliminary injunction, which were filed on March 5, 2008.

54. During the initial telephone status conference (March 6, 2008) with the parties, the Court denied without prejudice Klinge's motion for a temporary restraining order and preliminary injunction in light of the agency's agreement not to place any additional orders under the Contract and not to use any of the LFRS already ordered. Additionally, the parties agreed to a briefing schedule whereby the parties would file cross-motions on the Administrative Record, which would culminate in oral argument on April 10, 2008.

55. The agency filed the Administrative Record on March 11, 2008. On March 18, 2008, the Court initiated a telephone conference with the parties. During that telephone conference, the Court advised the parties that, upon review of the pleadings, a remand to the agency would be appropriate to allow the agency to address the issue of Sea Box's compliance with the TAA and the apparent inconsistencies in the record on the issue. Government counsel advised that he would seek the agency's consent to such a remand.

56. Later that afternoon, after speaking with the agency, Government counsel advised

that the Marine Corps refused to consent to a remand and indicated that it would revisit the TAA issue only if ordered to do so by the Court. Government counsel also advised that the agency believed a question existed with respect to Klinge's compliance with the TAA under CLIN 0003 (2-Year Parts Support Package). Accordingly, if the Court was inclined to order the agency to supplement the record concerning Sea Box's TAA compliance, the agency also wished to address Klinge's TAA compliance under CLIN 0003.

57. On March 19, 2008, the Court entered an Order remanding the matter to the agency "for the limited purpose of developing a more complete written record with respect to compliance with the TAA." (emphasis added). Specifically, the Court ordered the agency to obtain from Sea Box "a written explanation of the entire process of manufacturing, assembly, and testing of its refrigerated containers sufficient for the agency to adequately assess compliance." Additionally, the Court ordered the agency to provide Klinge an opportunity to supplement its TAA certification and explanation, "to avoid any disparate treatment from the re-evaluation of TAA compliance . . .." Per the Court's Order, the agency's supplemental TAA determination was due on April 2, 2008, and plaintiff's written response was due on April 7, 2008. The previous briefing schedule was rescinded, but the April 10th oral argument date remained in place.

58. Following the Court's Order, Sea Box provided supplemental information to the agency regarding its purported compliance with the TAA under CLINs 0001 (the LFRS), 0002 (the spare Refrigeration Unit), and 0003 (the 2-Year Parts Support Package). *See* Tab 46 of the Administrative Record. In its submission, Sea Box admitted that only "[redacted] *Id.* at 1422. Sea Box's admission that [redacted]

[redacted] Sea Box was ineligible for award. Moreover, the admission directly contradicted the pre-award representations made by Sea Box in its response to a discussion question concerning CLIN 0003 compliance. Significantly, the agency relied upon these now-admittedly inaccurate statements when awarding the Contract to Sea Box. Moreover, the GAO -- in deciding the merits of Klinge's protest on the CLIN 0003 issue -- also relied upon these inaccurate representations in upholding the agency's award decision. Specifically, in its unpublished written decision, the GAO held that:

[redacted]

Tab 45, *GAO Decision denying Klinge Corporation's protest on all grounds (February 13, 2008)*, at 1414 (footnote omitted).

59. After the Court's remand, when prompted by the agency, Klinge also reaffirmed its compliance with the TAA under CLIN 0003 and cited to those items in the Administrative Record which confirmed same. *See* Tab 47.

60. On April 2, 2008, the agency filed its supplemental TAA determination, which took the form of a document executed by CO McGinn entitled "MEMORANDUM FOR THE RECORD". *See* Tab 48 of the Administrative Record. CO McGinn's Memorandum cited to information supplied by Sea Box and Klinge regarding their respective compliance with the TAA (*see* Tabs 46 and 47 of the Administrative Record) and stated that the agency had

determined that Sea Box failed to demonstrate its compliance with the TAA under CLIN 0003. As such, CO McGinn stated that "it is my intent to immediately terminate" *See* Tab 48 of the Administrative Record, at 1460.

61. However, without explanation, CO McGinn's Memorandum further stated that Henrik Klinge's Declaration from the GAO protest regarding Klinge's Compliance under CLIN 0003, which was one of the documents cited by Klinge in its post-remand submission, [redacted] *Id.* at 1459. Finally, in his Memorandum, CO McGinn announced for the first time that the agency intended to conduct new market research, potentially change the performance specifications and Statement of Work for the LFRS acquisition, and re-compete the agency's requirement. *Id.* at 1460.

62. Five days later, on April 7, 2008, the day upon which Klinge's response to the above-described actions was due, Government counsel advised counsel for Klinge that the agency: (i) believed Sea Box may have made a pre-award misrepresentation with respect to CLIN 0003; (ii) believed that Klinge may be TAA compliant; and (iii) would need additional information to fully asses the parties' TAA compliance.

63. On April 7, 2008, the agency filed an unopposed motion to stay proceedings. In it, the agency represented that "it now believes it has not had sufficient information from both plaintiff and Seabox [sic] and respectfully requests this Court to stay proceedings . . . ." The agency further advised that it would "seek additional information from the parties about their respective compliance with the TAA . . . ."

64. On April 8, 2008, the Court entered an Order granting the agency's motion. The Order also: (i) cancelled the April 10th oral argument; (ii) required the agency to obtain additional information and file a supplemental decision on or before April 14, 2008; and (iii)

deferred Klinge's obligation to file a response to the supplemental decision until further order of the Court.

65. The agency subsequently requested additional information from Sea Box and Klinge regarding their compliance, *vel non*, with the TAA. *See Defendant's Notice of Filing 2nd Supplement To The Administrative Record.* In response, Klinge re-explained how its initial offer was TAA compliant under CLIN 0003 and how Klinge intended to ensure compliance. By contrast, in its April 10th response to the agency, Sea Box admitted tha[redacted] *Id.* Sea Box continued by stating that, [redacted] Additionally, Sea Box -- [redacted]

[redacted]

*Id.* (emphasis added).

66. In light of the foregoing, CO McGinn executed a second "MEMORANDUM FOR THE RECORD", dated April 14, 2008, in which he memorialized his determination that (i) Klinge is compliant with the TAA under CLIN 0003, and (ii) that Sea Box "provided a clear and

unambiguous statement regarding its ability to comply with the TAA." CO McGinn added that, [redacted]

67. With respect to CLIN 0001 (the LFRS), the agency noted that Sea Box had restated its willingness to [redacted] Additionally, CO McGinn expressed his opinion that Sea Box substantially transforms its end product in [redacted] without elaborating which [redacted] Finally, CO McGinn stated that [redacted] Given his finding that both offerors are TAA compliant, CO McGinn stated that the agency no longer intended to terminate the Contract with Sea Box. Notably, there was no mention in CO McGinn's revised Memorandum of the need to conduct new market research, change the performance specifications and SOW, and re-compete the agency's requirement; rather, now that award to Sea Box was being affirmed, the agency was again satisfied that the solicitation accurately represented its needs.

68. In light of the foregoing, Klinge initiated a telephone conference with the Court, which was held on April 17, 2008 and included participation by agency counsel and Robert Farber of Sea Box. As a result of that telephone conference, the Court entered an Order

requiring Klinge to file this First Amended Complaint on April 21, 2008. Additionally, the Court set forth a schedule for briefing and oral argument.

**COUNT I**
**IMPROPER AGENCY ACTION**
**MISAPPLICATION OF THE TRADE AGREEMENTS ACT TO CLIN 0001 (LFRS)**

69. Klinge incorporates by reference paragraphs 1 through 68 of its First Amended Complaint above, as if fully restated herein.

70. The two primary components of Sea Box's LFRS -- [redacted] to form a functioning Refrigerated Container/LFRS. Once integrated, the LFRS is a new and different article of commerce with a name, character, and use distinct from those of the Refrigeration Unit and the Container from which the LFRS is transformed. Thus, as a matter of law, substantial transformation of the LFRS, as defined in DFARS 252.225-7021 [redacted]

71. Because substantial transformation of Sea Box's LFRS occurs [redacted] it constitutes [redacted] end product, which the agency is prohibited from purchasing pursuant to the TAA. *See* DFARS 252.225-7021.

72. In light of the foregoing, the agency's award of the Contract to Sea Box was arbitrary, capricious, an abuse of discretion, and not in accordance with law. Moreover, while the agency has failed to take a position regarding whether the substantial transformation test as applied to CLIN 0001 requires integration of the RU and ISO Container in the U.S. or a designated country, it was arbitrary, capricious, an abuse of discretion, and not in accordance with the law for the agency to base its most recent award rationale upon a post-award assurance by Sea Box that it will integrate such components within [redacted] if so required by the TAA.

73. Klinge was prejudiced by the improper award to Sea Box. Had the agency acted

reasonably and in accordance with law, it would have determined that Sea Box's proposal did not comply with the TAA and was not acceptable for award. In such case, Klinge had a substantial chance of receiving the Contract award, as it offered a fully compliant proposal that was next in line, by a substantial margin, in terms of price and likely would have been determined to represent "best value" to the agency. *See Source Selection Evaluation Team Final Findings and Results (October 9, 2007)*, Attachment 14, P000124-125. Specifically, the Source Selection Evaluation Team found that "[a]ll three offerors presented very solid technical proposals." Moreover, both Klinge and the third party offeror were deemed [redacted] in the area of "Operational Effectiveness and Supportability". *Id.* While the agency assigned Klinge a [redacted] rating in the area of past performance and the third party offeror a [redacted] rating, Klinge's overall price [redacted] was more than [redacted] less than the third party's overall price [redacted] *Id.*

**COUNT II**
**IMPROPER AGENCY ACTION**
**AWARD OF THE CONTRACT BASED UPON A MATERIAL MISREPRESENTATION**
**CONCERNING CLIN 0001 (LFRS)**

74. Klinge incorporates by reference paragraphs 1 through 73 of its First Amended Complaint above, as if fully restated herein.

75. Sea Box made a material misrepresentation to the agency by representing its LFRS to be a [redacted] for purposes of TAA compliance. *See Excerpts From Sea Box, Inc.'s Final Proposal Revision*, Attachment 12, P-000112.

76. The representation is false because it is based on a non-existent, erroneous legal standard and because it conflicts with the manufacturing process described in Sea Box's initial proposal, written discussion responses, and FPR, which reveal the LFRS to be an end product of [redacted] Moreover, the representation conflicts with the country of origin and place of

performance certifications submitted as part of Sea Box's initial proposal, which also untruthfully identify the country or origin of Sea Box's LFRS to be [redacted] but accurately identify the place of manufacture as [redacted] *See* P-000050-54. The representation [redacted] with Sea Box's representations regarding the similar products on its GSA Schedule contract. *See generally* Attachment 25.

77. The agency relied upon Sea Box's representation that its LFRS is a [redacted] for purposes of TAA compliance. This reliance was central to the agency's determination that Sea Box's proposal met the TAA and to the agency's conclusion that the Sea Box proposal was eligible and acceptable for award.

78. Because the agency relied on material misrepresentations by Sea Box, its award to Sea Box was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

79. Klinge was prejudiced by the agency's acquiescence in and reliance on Sea Box's material misrepresentations. Had the agency acted reasonably and in accordance with law, it would have rejected Sea Box's conflicting, unsubstantiated claims that [redacted] and would have determined that Sea Box was not eligible for award. Had it done so, Klinge had a substantial chance of receiving the contract award, as it offered a fully compliant proposal that was next in line, by a substantial margin, in terms of price and likely would have been determined to represent "best value" to the agency. *See Source Selection Evaluation Team Final Findings and Results (October 9, 2007)*, Attachment 14, P000124-125.

**COUNT III**
**IMPROPER AGENCY ACTION**
**PREJUDICIALLY UNFAIR DISCUSSIONS**

80. Klinge incorporates by reference paragraphs 1 through 79 of its First Amended

Complaint above, as if fully restated herein.

81. Collectively, Sea Box's initial proposal, written discussion responses, and FPR clearly establish that Sea Box's LFRS constitutes a [redacted] end product.

82. Following the common cutoff date for FPRs, the agency contacted Sea Box by telephone to advise that its written discussion response failed to demonstrate compliance with the TAA.

83. During those communications, the agency permitted Sea Box to disavow the substance and content of its written discussion response and to make conflicting, oral assurances regarding its manufacturing process. These oral assurances were inconsistent with the certifications and representations in Sea Box's initial proposal, as well as with the representations in its written discussion response and FPR.

84. The agency's communications constituted "discussions" under FAR 15.306 because they afforded Sea Box an opportunity to revise its proposal and make its offer -- otherwise unacceptable -- acceptable to the agency. In essence, these discussions permitted an oral revision of Sea Box's written proposal materials.

85. The agency's participation in these post-FPR communications and its award of the Contract to Sea Box was arbitrary, capricious, an abuse or discretion, and otherwise contrary to law. The agency's shepherding of Sea Box to an unsubstantiated, oral statement of TAA compliance, and its acceptance of that statement in lieu of Sea Box's written representations, constitutes unequal treatment that favors one offeror over another, in violation of FAR 1.102(b)(3), 15.306(d)(3), 15.306(e)(1), and 15.307(b).

86. Additionally, after the Court remanded this matter to the agency for the "limited purpose" of developing the record with respect to TAA compliance, Sea Box [redacted] that its

offer was non-compliant with the TAA under [redacted] Initially, the agency determined that it would terminate the Contract as a result of Sea Box's admission. However, subsequently, the agency permitted Sea Box an opportunity to "cure" its misrepresentation by modifying its proposal to use TAA-compliant sourcing for certain parts under CLIN 0003.

87. Klinge was prejudiced by the agency's participation in the post-FPR discussions described above relating to CLIN 0001. Moreover, Klinge was prejudiced by the agency's indifference to the admitted misrepresentation in Sea Box's discussion response concerning CLIN 0003, as well as it decision to go beyond the "limited purpose" of the remand to permit Sea Box to change its offer to "cure" the non-compliance. Had the agency acted fairly and in accordance with law prior to award, it would have determined that Sea Box's proposal did not comply with the TAA and was not acceptable for award. Had the agency acted fairly and in accordance with the law after award, it would have terminated the Contract with Sea Box when Sea Box admitted that its offer was non-compliant with the TAA under CLIN 0003. Under either scenario, Klinge had a substantial chance of receiving the contract award, as it offered a fully compliant proposal that was next in line, by a substantial margin, in terms of price and likely would have been determined to represent "best value" to the agency. *See Source Selection Evaluation Team Final Findings and Results (October 9, 2007)*, Attachment 14, P000124-125.

**COUNT IV**
**IMPROPER AGENCY ACTION**
**MISAPPLICATION OF THE TRADE AGREEMENTS ACT**
**TO CLIN 0003 (2-Year Parts Support Package)**

88. Klinge incorporates by reference paragraphs 1 through 87 of its First Amended Complaint above, as if fully restated herein.

89. Sea Box admitted during the remand proceedings that its pre-award offer did not comply with the TAA under CLIN 0003.

90. In light of this admission, the agency initially determined that Sea Box was ineligible for award and the agency would, therefore, terminate the Contract with Sea Box. However, the agency subsequently changed its course and provided Sea Box with yet another opportunity to "cure" its ineligibility for award. This time, the cure was affected during the remand by obtaining an assurance from Sea Box's parts supplier -- for the first time -- that all parts supplied under CLIN 0003 would be sourced from the U.S. or a designated country.

91. After obtaining said assurance from Sea Box, the agency determined that it would not terminate the Contract and, instead, would permit Sea Box to continue performance.

92. In light of the foregoing, the agency's award of the Contract to Sea Box (and its decision not to terminate the Contract) was arbitrary, capricious, an abuse of discretion, and not in accordance with law. Moreover, it was arbitrary, capricious, an abuse of discretion, and not in accordance with the law for the agency to permit Sea Box to again alter its initial proposal, written discussion response, and FPR by admitting non-compliance, finding alternative sourcing for non-compliant components, and expressing a willingness by its supplier to absorb the cost of same.

93. Klinge was prejudiced by the improper award to Sea Box. Had the agency acted reasonably and in accordance with law, it would have determined that Sea Box's proposal did not comply with the TAA and was not acceptable for award. In such case, Klinge had a substantial chance of receiving the Contract award, as it offered a fully compliant proposal that was next in line, by a substantial margin, in terms of price and likely would have been determined to represent "best value" to the agency. *See Source Selection Evaluation Team Final Findings and Results (October 9, 2007)*, Attachment 14, P000124-125. Specifically, the Source Selection Evaluation Team found that "[a]ll three offerors presented very solid technical

proposals." Moreover, both Klinge and the third party offeror were deemed "Acceptable" in the area of "Operational Effectiveness and Supportability". *Id.* While the agency assigned Klinge a [redacted] rating in the area of past performance and the third party offeror a [redacted] rating, Klinge's overall price [redacted] as more than [redacted] less than the third party's overall price [redacted] *Id.*

**COUNT V**
**IMPROPER AGENCY ACTION**
**AWARD OF THE CONTRACT BASED UPON A MATERIAL MISREPRESENTATION**
**<u>CONCERNING CLIN 0003 (2-Year Parts Support Package)</u>**

94. Klinge incorporates by reference paragraphs 1 through 93 of its First Amended Complaint above, as if fully restated herein.

95. Sea Box made pre-award, material misrepresentations to the agency by representing the following in written discussion responses regarding CLIN 0003:

[redacted]

Tab 21 of the Administrative Record, *USMC questions submitted to Sea Box, Inc. and response from Sea Box, Inc. (September 6 & 12, 2007)*, at 889 (emphasis added).

96. The agency relied upon the foregoing representations in determining that Sea Box was compliant with the TAA under CLIN 0003 and in awarding the Contract to Sea Box.

97. During the remand proceedings ordered by this Court, Sea Box admitted that the foregoing representations were inaccurate. Specifically, Sea Box [redacted]

98. In light of Sea Box's admission, the agency initially made a determination that it would terminate the Contract with Sea Box.

99. Subsequently, however, the agency permitted Sea Box an opportunity to address the foregoing inconsistency. In response, Sea Box was unable to demonstrate the veracity of its written discussion response or to otherwise reconcile the statements. Instead, Sea Box confirmed that the information supplied to the agency pre-award was inaccurate and changed its offer by expressing the willingness of its parts supplier to find alternative sourcing (and absorb the cost of same) for non-compliant spare parts. As a result, the agency ignored Sea Box's earlier and blatant misrepresentation, permitted Sea Box to again change its offer, and allowed Sea Box to "cure" its ineligibility.

100. Because the agency relied on material misrepresentations by Sea Box with respect to CLIN 0003 when initially awarding the Contract, its award to Sea Box was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. Moreover, notwithstanding the agency's post-award willingness to ignore Sea Box's misrepresentation with respect to CLIN 0003 and its desire to permit Sea Box to "cure" its ineligibility, the agency's award was based upon material misrepresentations, was issued to an ineligible offer, and was arbitrary, capricious, an abuse of discretion, and not in accordance with the law.

101. Klinge was prejudiced by the agency's acquiescence in and reliance on Sea Box's material misrepresentations. Had the agency acted reasonably and in accordance with law, it would have terminated the Contract with Sea Box. Had it done so, Klinge had a substantial chance of receiving the contract award, as it offered a fully compliant proposal that was next in line, by a substantial margin, in terms of price and likely would have been determined to represent "best value" to the agency. *See Source Selection Evaluation Team Final Findings and*

*Results (October 9, 2007)*, Attachment 14, P000124-125.

**PRAYER FOR RELIEF**

WHEREFORE, on the basis of the foregoing, Klinge respectfully seeks the following relief from this Court:

A. The agency has agreed to stay performance of the Contract. During the course of these proceedings, should the agency no longer voluntarily stay performance of the Contract, a temporary restraining order and preliminary injunction enjoining the United States, including the agency and its contracting personnel, from issuing any further delivery orders to Sea Box under the Contract and requiring the agency to notify Sea Box that its performance under any already existing delivery orders is suspended pending the outcome of this bid protest;

B. A declaratory judgment that the agency's award of the Contract to Sea Box was arbitrary, capricious, an abuse of discretion, or otherwise contrary to the law;

C. An order directing the agency to award the Contract to Klinge, if appropriate or (a) reopen the competition, (b) perform a "best value" comparison of the offers within the competitive range, with Sea Box excluded from same, and (c) award the Contract to the offeror that represents "best value" to the agency;

D. An order granting Klinge its bid preparation costs and the costs of pursuing this protest, including attorneys' fees; and

E. An order granting such additional relief as this Court may deem just and proper.

Respectfully Submitted,

Dated: April 21, 2008

By: Richard P. Rector by Seamus Curley
SEAMUS CURLEY

Richard Rector
DLA PIPER US LLP
500 8th Street, NW
Washington, DC 20004
Telephone: 202.799.4000
Facsimile: 202.799.5000

Counsel for Plaintiff

Of Counsel:

Seamus Curley
DLA PIPER US LLP
500 8th Street, NW
Washington, DC, 20004
Telephone: 202.799.4403
Facsimile: 202.799.5403