# In the United States Court of Federal Claims

No. 08-134C

(Originally Issued Under Seal: November 21, 2008)

(Reissued with Redactions: December 10, 2008)[1]

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

KLINGE CORPORATION,

                    *Plaintiff*,

v.

                                                  Bid Protest; Equal
                                                  Access to Justice
                                                  Act; Attorneys' Fees

THE UNITED STATES,

                    *Defendant,*
and

SEA BOX, INC.

                    *Intervenor.*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

 *Richard P. Rector* and *Seamus Curley*, Washington, DC, for plaintiff.

 *Christopher L. Krafchek*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Gregory G. Katsas*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Kirk Manhardt*, Assistant Director, for defendant.

---

[1] This opinion was first issued under seal on November 21, 2008. The parties were directed to propose redactions to the opinion on or before December 5, 2008. Defendant submitted its proposed redactions on December 5, 2008. Plaintiff does not oppose defendant's redactions. The court has adopted defendant's recommended redactions, as reflected herein. Redactions are indicated by the use of asterisks.

_____

OPINION

_____

BRUGGINK, *Judge*.

Pending in this bid protest is plaintiff's post-award motion for Attorneys' Fees and Expenses pursuant to the Equal Access to Justice Act ("EAJA" or "the act"), 28 U.S.C. § 2412 (2000). On June 5, 2008, we entered judgment for Klinge Corporation ("plaintiff" or "Klinge"). *Klinge Corp. v. United States*, 82 Fed. Cl. 127 (2008). We concluded that the U.S. Marine Corps Systems Command's ("the agency") award of a contract for Large Field Refrigeration Systems ("LFRS") to Sea Box, Inc. ("Sea Box") was arbitrary, capricious, and not in accordance with law.

Plaintiff timely filed its EAJA motion requesting reimbursement of $84,068.94 in fees and expenses. Defendant opposes the motion, arguing that the government's position in the litigation was substantially justified within the meaning of the act. Defendant concedes that plaintiff otherwise meets EAJA requirements. For the reasons set out below, we hold that the government's overall litigation position was not substantially justified and we grant plaintiff's motion.

BACKGROUND[2]

On April 10, 2007, the agency issued Request for Proposals ("RFP") M67854-07-R-5060. The agency sought to procure an indefinite quantity of LFRSs, which are large, portable, refrigerated containers. An LFRS is constructed of two primary components, a refrigeration unit ("RU") and an insulated container. This part of the proposal was covered by Contract Line Item Number ("CLIN") 0001. In addition, the RFP sought a two-year parts support package, covered by CLIN 0003.

_____

[2] The facts of this case are taken from our June 5, 2008 opinion. We assume the readers' knowledge of the facts and provide an abbreviated version here.

2

The contract was subject to the Trade Agreements Act of 1979 ("TAA"), 19 U.S.C. § 2501 (2006). *See also* 48 C.F.R. § 25.402(b) (2007). The solicitation required offerors to certify "[f]or all line items subject to the Trade Agreements clause of this solicitation . . . each end product to be delivered under this contract . . . is a U.S.-made, qualifying country, or designated country end product." Defense Federal Acquisition Regulation Supplement ("DFARS") 252.225-7020 (Trade Agreements Certificate). DFARS standard clause 252.225-7021(a)(12), incorporated in the solicitation by Amendment No. 1 to the RFP (Administrative Record ("AR") at 43), instructs offerors that a "US-made end product" is one that is "mined, produced, or manufactured in the United States" or is "substantially transformed in the United States into a new and different article of commerce with a name, character, or use distinct from that of the article or articles from which it was transformed." DFARS 252.225-7021(a)(12).

It was clear from Sea Box's initial proposal that its container would be built in China and that the RU would be shipped from Singapore to China to be joined with the container. China was listed in the schedule of work as the place of "Final Assembly." Sea Box certified, however, that Singapore was the "country of origin" of its LFRS. Singapore is a "qualifying country" under the TAA. In a separate entry on its proposal form, Sea Box indicated that the place of manufacture was outside of the United States. After review of the initial proposals, the agency determined that Sea Box's proposal provided the best value and awarded the contract to Sea Box on July 12, 2007.

Klinge filed a protest with the General Accountability Office ("GAO") on July 30, 2007, challenging its exclusion from the competition. In response to the protest, the agency informed the offerors that it would take corrective action by admitting Klinge to the competitive range and reopening discussions. The GAO dismissed the protest as moot.

The agency then asked Klinge and Sea Box in writing to provide a TAA Certificate and to explain how their manufacturing processes satisfied the TAA. Despite the questions raised by Sea Box's proposal concerning its TAA compliance and Klinge's protest, there were no documents in the record, as it existed during the second evaluation, reflecting any consideration by the agency of the TAA compliance issue. Instead, as only later became apparent in the agency submission during a second GAO protest, agency counsel contacted counsel for Sea Box and orally expressed reservations about Sea Box's TAA compliance, although only with respect to CLIN 0001. According

to an affidavit by agency counsel, which the agency supplied late in the GAO process, he felt assured by Sea Box's counsel, who in turn was passing on information from Sea Box's President, that Sea Box had inadvertently mis-characterized its manufacturing process in its written discussion responses. Sea Box's counsel, Mr. Farber, assured agency counsel that in fact the mechanical and electrical integration of its LFRSs did not occur in China. Based on that information, Sea Box was found to be technically acceptable, and the award to Sea Box was confirmed on October 18 & 23, 2007. Klinge and a third offeror were also deemed acceptable.

On November 6, 2007, Klinge filed a second protest at the GAO, questioning once again Sea Box's compliance with the TAA. On February 13, 2008, the GAO rejected Klinge's second protest. Based on Sea Box's assertions in its written explanation, the GAO concluded, *inter alia*, that the only activity which occurred in China was the bolting of the panel to the container for shipment purposes, and that the rest of the integration of the LFRS occurred in the United States.

On March 6, 2008, plaintiff filed its complaint in this court. On March 19, 2008, we remanded the case to the agency, so that it could further develop the record and explain its analysis of the TAA compliance issue. We also sought an explanation of the "entire process of manufacturing, assembly and testing" to assess what Sea Box meant in its schedule of work that "Final Assembly" and testing would take place in China.

In order to respond to potential confusion concerning CLIN 0003 (spare parts), Sea Box, after consultation with its parts supplier, admitted that  *  *  * of the costs of its parts included in CLIN 0003 were not sourced from the United States or from a designated country.[3]  Because of this admission and the fact that nearly one year had passed after the solicitation had been issued, the CO intended to cancel the award to Sea Box as well as the solicitation and conduct more market research with the idea of issuing a new solicitation at a later time. The agency changed course shortly thereafter; thus, defendant filed a motion to extend the stay of proceedings in order to give the agency more

---

[3] Defendant conceded that "Sea Box failed to provide an explanation or reconcile this latest certification of TAA compliance with its RFP or prior submissions to GAO." Def.'s Br. in Resp. 19.

time to solicit further information from both offerors regarding TAA compliance.  We granted that motion on April 8, 2008.

Both Sea Box and Klinge provided further supplementation regarding TAA compliance.  Sea Box changed its prior explanations by representing that "the country of origin for each and every one of the  *  *  * individual parts . . . is either the United States or a designated country."  AR at 1464 (Sea Box letter to the CO, Apr. 10, 2008).  In order to make this representation, however, it explained that it had to get assurance from its primary supplier that the supplier would source all parts from compliant locations, albeit at higher cost to itself.  This assurance meant that all  *  *  * spare parts were now to be acquired from the United States or other designated countries.  Based on this representation, the agency confirmed the award to Sea Box.

In response, Klinge filed an amended complaint.  In its complaint, Klinge contested the agency's acceptance of Sea Box's proposal in the face of what it asserted were problems with CLIN 0001's TAA compliance.  On June 5, 2008, we entered judgment for Klinge, concluding that the agency's award to Sea Box was arbitrary, capricious, and not in accordance with the law.  *Klinge*, 82 Fed. Cl. at 137-38.  Specifically, we held that:

> At no point has the CO given a satisfactory justification for his reliance upon the characterization of what occurs in China as the 'mere bolting of the Singapore refrigeration unit into the Chinese container for shipment to the U.S.'  It should have been readily apparent to the CO that Sea Box's informal oral characterizations of its proposal were inaccurate . . . .
>
> . . . .
>
> . . . [T]here can be no question that, up until April 1, 2008, when Sea Box offered to make the LFRS in New Jersey, the CO could not have treated the proposal as clearly TAA compliant with respect to CLIN 0001.  At a minimum, there were so many statements suggesting that the critical functions of turning the product into an LFRS occurred in China, that the CO should have insisted on more information.  We view Sea Box's counsel's disavowals of these contraindications as not a substantial basis for eliminating concern.  Sea Box's submissions to the agency, to the GAO, and to this court have

been materially inconsistent and confusing, and they have been
predicated on an incorrect understanding of the relevant test.  It
was arbitrary and capricious to ignore this fact.  We conclude
that it was arbitrary and capricious of the agency to accept Sea
Box's proposal as satisfying the TAA certification requirement.

*Id*.  We enjoined the agency from accepting further performance of the RFP
from Sea Box.  *Id.* at 139.  On July 3, 2008, plaintiff filed its EAJA motion.

DISCUSSION

A party in an action by or against the United States may recover
attorneys' fees if (1) the claimant is a prevailing party; (2) the government's
litigation position was not substantially justified; (3) no special circumstances
make an award unjust; and (4) the fee application is submitted to the court
within 30 days of final judgment in the action and is supported by an itemized
statement. 28 U.S.C. § 2412(d)(1)(A), (B).  The only issue with respect to the
pending motion is whether the government's litigation position was
substantially justified, an issue as to which the government holds the burden
of proof. *White v. Nicholson*, 412 F.3d 1314, 1315 (Fed. Cir. 2005).

The Supreme Court has defined substantial justification as "not
'justified to a high degree,' but rather 'justified in substance or in the main'–
that is, justified to a degree that could satisfy a reasonable person." *Pierce v.
Underwood*, 487 U.S. 552, 565 (1998).  A position can be justified "even
though it is not correct, and . . . it can be substantially (*i. e.*, for the most part)
justified if a reasonable person could think it correct, that is, if it had a
reasonable basis in law and fact." *Id.* at 566.

We must "look at the entirety of the government's conduct [both prior
to and during litigation] and make a judgment call whether the government's
overall position had a reasonable basis in both law and fact." *Chiu v. United
States*, 948 F.2d 711, 715 (Fed. Cir. 1991).  The government's 'position'
encompasses both "the agency's pre-litigation conduct and the Department of
Justice's subsequent litigation positions . . . only one threshold determination
for the entire civil action is to be made." *Comm'r v. Jean*, 496 U.S. 154, 159
(1990).

Defendant argues that the government's overall litigation position was substantially justified because it relied on a United States Customs and Border Protection ("CBP") Advisory Ruling, as well as upon the test set forth by the United States Supreme Court in *Anheuser-Busch Brewing Ass'n. v. United States*, 207 U.S. 556, 562 (1908), in taking the position that Sea Box's LFRSs were substantially transformed in the United States. The CBP ruling to which defendant refers determined the issue of substantial transformation by applying a 'totality of the circumstances' test, and considered factors such as:

> The country of origin of the article's components, the extent of the processing that occurs within a given country, and whether such processing renders a product with a new name, character, or use . . . . Additionally, facts such as resources expended on product design and development, extent and nature of post-assembly inspection procedures, and worker skill required during the actual manufacturing process will be considered when analyzing whether a substantial transformation has occurred; however, no one such factor is determinative.

*United States Customs and Border Protection Advisory Ruling*, HQ W563587 (February 8, 2007).

The United States Supreme Court's test in *Anheuser* states, however, that for a product to be substantially transformed in manufacturing, "[t]here must be transformation; a new and different article must emerge, 'having a distinctive name, character, or use.'" *Anheuser*, 207 U.S. at 562 (quoting *Joseph Schlitz Brewing Co. v. United States*, 181 U.S. 584 (1901)). In *Klinge*, we held that *Anheuser*, not the CBP Advisory Ruling, was the authoritative test to be applied. *Klinge*, 82 Fed. Cl. at 135. We held that "[t]he proper inquiry is thus at what point the article acquires its distinct name, character, or use. In this instance, we think that it was plainly China." *Id*.

Defendant argues that because the CBP "is the Federal agency charged with interpreting and applying the TAA," and because "the *Anheuser* test was announced 71 years before the TAA was enacted, it was reasonable for the defendant to rely upon both [tests] . . . ." Def.'s Resp. at 8. Although defendant concedes that the court is "certainly not bound by the CBP's . . . test," it maintains that its position in evaluating and confirming Sea Box's TAA compliance under both tests was reasonable, noting that plaintiff also relied on the CBP test in a prior motion. *Id.*

Although we reached the conclusion that substantial transformation of Sea Box's LFRSs occurred in China through the *Anheuser* analysis, we would have reached the same conclusion using the CBP test because the three primary factors listed in the aforementioned CBP Advisory Ruling were all analyzed in *Klinge*. Regarding the third CBP factor–whether processing within a given country results in a product with a new name, character, or use–we held that Sea Box's RUs and containers underwent their most extensive processing in China, as this manufacturing process converted the two separate products into one LFRS (i.e., a product with a new name, character, and use). *Klinge*, 82 Fed. Cl. at 136. Analyzing elements of the second CBP factor–the extent of the processing that occurs within a given country–we concluded that the agency's action was arbitrary and capricious in that it ignored Sea Box's numerous statements "suggesting that the critical functions of turning the product into an LFRS occurred in China." *Id.* at 138. We also analyzed CBP's first factor–the country of origin of the article's components–intermittently throughout the opinion. *See id.* at 128. After analyzing these factors, we held that the award to Sea Box was arbitrary, capricious, and not in accordance with the law. *Id.* at 139. Even an application of the CBP Advisory Ruling test therefore should have revealed that Sea Box's LFRSs were not TAA compliant.

The agency failed to investigate Sea Box's many statements suggesting substantial transformation of its LFRSs in China. Moreover, the agency relied on a telephone conversation with Sea Box's counsel (in which Mr. Farber materially disavowed information from Sea Box's written submissions) to determine that Sea Box's LFRSs were substantially transformed in the United States. We held in *Klinge* that the agency acted arbitrarily and capriciously in relying upon Sea Box's questionable assurances of its TAA compliance without making reasonable further inquiry. *Id.* at 137-38. We stated that "when . . . the agency has 'reason to believe that a firm will not provide compliant products, the agency should go beyond a firm's representation of compliance.'" *Id.* at 135 (quoting *Leisure-Lift, Inc.*, 2003 B-291878.3, B-292448.2, 2003 Comp. Gen. LEXIS 178, at *19 (Comp. Gen. 2003)).

Defendant posits that it was reasonable for agency counsel to have relied upon the verbal assurances of Mr. Farber regarding Sea Box's TAA compliance. The government claims that "merely because the Court and the defendant disagree about whether Sea Box adequately addressed the agency's concern, does not mean the defendant was not substantially justified in arguing that the agency acted reasonably in relying upon Sea Box's assurances."

Def.'s Resp. at 10. The inconsistent oral representations of Mr. Farber, however, were not a reasonable basis for the agency to ignore the *prima facie* compliance issues in Sea Box's original written submissions regarding the substantial transformation of its LFRSs in China, particularly when Sea Box's subsequent written explanations continued to create confusion.

In sum, the agency did not fulfill its legal duty to reasonably inquire into Sea Box's TAA compliance. We therefore reject defendant's argument that the agency was substantially justified in considering Sea Box's LFRSs TAA compliant. We find that the government's overall litigation position was not substantially justified and we grant plaintiff's EAJA motion.

*Calculation of EAJA Award Amount*

To qualify for award under the EAJA, a prevailing party must submit an application to the court "for fees and other expenses . . . including an itemized statement . . . stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B). Rule 54(d)(2) of the Rules of the United States Court of Federal Claims ("RCFC"), mandates that an EAJA claimant submit its Appendix of Forms 5 ("EAJA Form"), as well as "contemporaneous records of the status and usual billing rates of the attorneys who spent time on the case." *Loomis v. United States*, 74 Fed. Cl. 350, 357 (2006) (citing *Owen v. United States*, 861 F.2d 1273, 1275 (1988)).

Plaintiff timely filed the EAJA form as an attachment to its original EAJA motion on July 3, 2008. Furthermore, plaintiff submitted extensive documentation of the breakdown of its fees and expenses. Defendant does not contest the adequacy of plaintiff's documentation. We find plaintiff filed sufficient documentation of its fees and expenses and turn to the calculation of fees.

Fees "shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). To receive a cost of living adjustment ("COLA"), a prevailing party must "allege[] that the cost of living has increased, as measured by the Department of Labor's Consumer Price Index ("CPI")." *California Marine Cleaning, Inc. v. United States*, 43 Fed. Cl. 724, 733 (1999). The Federal Circuit has instructed that, instead of providing the court with a

CPI fee rate adjustment for every month worked, claimants should choose a middle point in the litigation period and use the CPI of that month to calculate the fee rate. *See Chiu*, 948 F.2d at 722 n. 10; *see also Lion Raisins*, 57 Fed. Cl. 505, 519 (2003).

Plaintiff calculated attorney fees by using April 2008's CPI as its mid-point for payment of legal services rendered between February 13, 2008, and September 2, 2008. Plaintiff seeks compensation for 450 hours at a COLA-adjusted rate of $172.47[4] per hour. We find that April 2008 is an acceptable mid-point upon which to calculate the COLA and grant plaintiff's request for $77,611.49 in attorneys' fees.

Plaintiff also seeks reimbursement for 4.4 hours of paralegal services at the COLA-adjusted rate of $172.47 per hour. The United States Supreme Court recently held that "a prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the Government at prevailing market rates." *Richlin Sec. Serv. Co. v. Chertoff*, 128 S. Ct. 2007, 2019 (2008). Plaintiff is a prevailing party that satisfies the EAJA requirements. We therefore award plaintiff $758.86 in paralegal fees.

Finally, plaintiff seeks recovery for miscellaneous expenses in the amount of $5698.59, for such items as legal research, court filing, printing/duplication, local travel, delivery, and transcript fees. A successful litigant may recover "those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial." *Oliveira v. United States*, 827 F.2d 735, 744 (Fed. Cir. 1987). We find that the expenses documented by plaintiff in this case were all reasonable and necessary expenses incurred in preparation for trial. We therefore grant plaintiffs motion for $5698.59 in miscellaneous expenses. The total amount awarded for attorneys' fees, paralegal fees, and miscellaneous expenses is $84,068.94.[5]

---

[4] Per the Bureau of Labor Statistics, U.S. Department of Labor, Consumer Price Index, March 1996's CPI was 155.7 and April 2008's CPI was 214.823. *Available at* http://www.bls.gov/data/. Therefore, plaintiff's $172.47 per hour rate was calculated by the equation $125 x 214.823/155.70.

[5] This amount consists of $77,611.49 in attorneys' fees, $758.86 in paralegal services, and $5698.59 in miscellaneous expenses.

CONCLUSION

The government's litigation position was not substantially justified. Plaintiff has demonstrated its entitlement to recover its fees and expenses pursuant to the EAJA.  Accordingly, the Clerk is directed to enter judgment for plaintiff in the amount of $84,068.94.


s/Eric G. Bruggink
Eric G. Bruggink
Judge